**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard J. Urlaub II<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-19-02851-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Richard J. Urlaub II's Application for Disability Insurance Benefits under the Social Security Act (the "Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 16, Pl. Br.), Defendant SSA Commissioner's Opposition (Doc. 17, Def. Br.), and Plaintiff's Reply (Doc. 20). The Court has reviewed the briefs and the Administrative Record (Doc. 12, R.) and now reverses the Administrative Law Judge's ("ALJ") decision (R. at 15–25).

**I.  BACKGROUND**

Plaintiff filed his Application on August 31, 2015 for a period of disability beginning on January 18, 2015. (R. at 15.) Plaintiff's claim was denied initially on December 15, 2015, and upon reconsideration on May 4, 2016. (R. at 15.) Plaintiff then testified at a hearing held before the ALJ on April 30, 2018. (R. at 27.) On May 17, 2018,

the ALJ denied Plaintiff's Application, which became the final decision on March 9, 2019 when the Appeals Council denied Plaintiff's request for review. (R. at 1–6.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the severe impairments of affective disorder and substance abuse disorder. (R. at 17.) Plaintiff's appeal raises issues pertaining only to the first impairment.

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded Plaintiff is not disabled. (R. at 24.) She determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but with the following non-exertional limitations: he can meet the basic demands of simple, unskilled work in a work environment that requires only occasional, superficial contact with the public and coworkers, and where he is not expected to resolve conflicts or persuade others to follow." (R. at 19.) She concluded that Plaintiff is unable to perform any past relevant work but can perform a significant number of jobs in the national economy, including a dishwasher, a hand packager, and a laundry worker. (R. at 34–35.) The vocational expert decreased the number of available jobs by 50% to account for Plaintiff's social limitations. (R. at 61.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside an ALJ's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept

as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps. The burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment in the regulations. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four, where she assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the final step to determine whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises the following arguments for the Court's consideration: (1) the ALJ improperly rejected Plaintiff's symptom testimony; (2) the ALJ gave improper weight to the opinions of state agency reviewing psychologists Dr. Khan & Dr. Rubin; (3) the ALJ

erred in calculating Plaintiff's RFC; and (4) the ALJ improperly rejected lay witness testimony.

**A.	The ALJ erred in rejecting Plaintiff's symptom testimony.**

The ALJ engages in a two-step analysis when evaluating a claimant's symptom testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, she must determine whether the claimant has produced objective medical evidence of an underlying impairment. *Id.* Second, unless there is evidence that the claimant is malingering, the ALJ must provide specific, clear, and convincing reasons for rejecting symptom testimony associated with the underlying impairment. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). This is the most demanding standard in Social Security cases. *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). Here, the ALJ found an underlying impairment of affective disorder (bipolar I disorder) (R. at 17) and cited no evidence of malingering. Accordingly, she needed to provide specific, clear and convincing reasons to discount Plaintiff's symptom testimony.

The ALJ first summarized Plaintiff's hearing testimony and his Functioning Report. Plaintiff experiences a manic episode approximately once per year that lasts a few days. (R. at 19.) These episodes are followed by periods of depression that last for months. (R. at 48.) Plaintiff endorses symptoms of depressed mood; uncontrolled anger and irritability; difficulty in concentration, remembering, completing tasks, and getting along with others; recurrent suicidal ideation; increased withdrawal and isolation; procrastination; auditory hallucinations; slowed thought process; loss of energy; feelings of worthlessness; insomnia; and decreased interest and appetite. (R. at 20.) As acknowledged by the ALJ, Plaintiff has been fired from every job he has had. (R. at 19.)

In making credibility determinations, an ALJ may consider "the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Here, the ALJ appears to present two bases for discounting Plaintiff's testimony: (1) inconsistency with Plaintiff's daily activities and (2) inconsistency with the objective

medical evidence.[1]

### 1. Plaintiff's Daily Activities

As to the first justification, an ALJ may find that a claimant's testimony regarding his daily activities detracts from the claimant's credibility when the activities contradict other testimony and meet the "threshold for transferable work skills." *Orn*, 495 F.3d at 639. In other words, daily activities may lead to an adverse credibility finding if the activities are transferable to a work setting and the claimant can engage in them for a substantial part of his day. *Id.*

Here, the ALJ noted that Plaintiff is "able to bathe, dress, toilet, and care for his personal needs without assistance. He can prepare simple meals and feed himself. He does cleaning, laundry, and mowing. He is able to drive, and can go out unaccompanied. He shops in stores for necessities." (R. at 23.) The ALJ's discussion of Plaintiff's daily activities went no further. She did not analyze how much time Plaintiff spends on his daily activities and whether they are transferrable to a work setting. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

---

[1] Additionally, the ALJ mentioned Plaintiff's "history of poly-substance abuse" (R. at 21), but did not comment on whether this impacted her credibility analysis. She listed instances of hard drug use between 1999 and 2006—dates occurring *at least* 11 years before the ALJ's decision and at least eight years before the onset date of Plaintiff's disability—and stated Plaintiff was "diagnosed with cannabis abuse." However, without explaining how or even whether Plaintiff's past drug usage affects his present credibility, the Court finds this reason neither specific nor clear and convincing.

The ALJ also said "[Plaintiff] minimized his pattern of use of marijuana. At Southwest he admitted to smoking marijuana daily or casually." (R. at 21.) Again, the ALJ's purpose here is not clear because she did not explain what she meant or whether this affected Plaintiff's credibility. To the extent she suggests this shows inconsistency, the Court disagrees. The citation the ALJ provided for casual or daily smoking is from October 2014. (R. at 384.) In later treatment notes, Plaintiff was evidently decreasing his use of marijuana. (R. at 467, 469.) And in notes from 2018, Plaintiff reported he was now sober with a plan to maintain sobriety. (R. at 449, 451, 453.) The Court finds the ALJ's cursory reference to Plaintiff's drug usage neither specific nor clear and convincing.

Plaintiff testified that his disorder produces manic episodes followed by depression and isolation. (R. at 48.) He experiences periods of irritability about three days per week, during which he is agitated and prone to angry outbursts with both family members and strangers. (R. at 50–52.) During these times he stays at home and forgets to do things that he would not normally forget to do. (R. at 52.) He has trouble concentrating and completing household chores because he "does not have energy to do anything really." (R. at 55.) Plaintiff's testimony demonstrates that while he can sometimes perform tasks like driving and shopping for essentials, he also often fails to complete them. Further, the fact that he is able to take care of basic needs is not necessarily inconsistent with his prolonged bouts of depression, agitation, and anger. The ALJ also did not consider the fact that Plaintiff has been fired from every job he has had.

The ALJ does not explain, as she must, how the tasks Plaintiff may complete are transferrable to a work setting on a sustained basis. Accordingly, this ground for discrediting Plaintiff's testimony is legally insufficient. *See Garrison*, 759 F.3d at 1014.

### 2. Objective Medical Evidence

The ALJ also discounted Plaintiff's testimony as being "not entirely consistent" with objective medical evidence. (R. at 20.) While an ALJ is permitted to reduce the weight given to a claimant's testimony if it is unsupported by objective medical evidence, this cannot be the sole reason the testimony is rejected. *Burch*, 400 F.3d at 681. Because the ALJ's other reasons for rejecting Plaintiff's testimony were legally insufficient, a mere lack of objective support, without more, is also insufficient to reject Plaintiff's testimony. *Id.* at 680.

Even if the Court were to consider this basis, it finds it neither specific nor clear and convincing. "To support a lack of credibility finding, the ALJ [is] required to point to *specific facts* in the record." *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). Here, the ALJ made just two unconvincing citations to the medical record. The first was to a single treating note from Southwest Network in October 2014—three and a half years before the hearing—where Plaintiff said, "I'm pretty good when I'm on my meds. I'm now

pretty stable." (R. at 20 (citing R. at 384).) However, as the Ninth Circuit has emphasized while discussing mental health issues, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. Moreover, the ALJ improperly cherry-picked this statement without considering the medical record as a whole. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Indeed, around the same time period and even during the same appointment, Plaintiff's providers also documented his mood as anxious, depressed, and despondent (R. at 395, 404, 407); noted passive suicide ideation (R. at 395); and reported episodes of irritability (R. at 398).

The ALJ's second reference to the medical record was Plaintiff's global assessment of functioning scores—also from 2014 and 2015—ranging from 40 to 75. (R. at 20.) This does not undermine Plaintiff's testimony because, in the words of the ALJ, it "indicates a wide range of impairment." (R. at 20.) The remainder of this portion of the ALJ's opinion merely summarized the medical opinions of the state agency reviewing doctors and consultative doctors. However, repetition of their *opinions* regarding disability is not the same as identifying specific facts and objective medical evidence that are inconsistent with Plaintiff's testimony, which is what the ALJ is required to do. *See Burrell*, 775 F.3d at 1137.

In discrediting a Plaintiff's symptom testimony, the ALJ must state which symptom "testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ did neither, leaving the Court guessing as to which aspects of Plaintiff's testimony factored in to the ALJ's finding a non-disability.

**B. The ALJ did not err in weighing Dr. Khan's and Dr. Rubin's opinions.**

Plaintiff argues the ALJ erred by assigning particular weight to the opinions of the state agency reviewing psychologists, *i.e.*, non-examining doctors. (Pl. Br. at 15–18.) The Court disagrees. In most cases, an ALJ must consider medical opinions from multiple sources, including treating doctors, examining doctors, and non-examining doctors. *Lester*,

81 F.3d at 830. Generally, the opinions of treating physicians are afforded more weight than those of examining physicians, whose opinions are afforded more weight than those of non-examining physicians. *Orn*, 495 F.3d at 631. Here, the medical opinions came from two non-examining psychologists, Drs. Tasneem Khan and Joshua Rubin, and two examining doctors, Drs. Tasha Haggar and William Chaffee. No treating doctor rendered an opinion.

At the initial level on December 15, 2015, Dr. Khan indicated Plaintiff had some moderate limitations but could "carry out (one to two step) instructions, follow simple work-like procedures, and make simple-work related decisions." (R. at 74.) Because of social limitations, Dr. Khan opined that Plaintiff is "best suited to work with minimal social demands where interaction with others is superficial and occasional." (R. at 75.) The ALJ gave this opinion significant weight because she found it was consistent with the medical record. (R. at 21.) At the reconsideration level on April 19, 2016, Dr. Rubin found similar limitations and vocational ability. (R. at 92.) The ALJ gave this opinion great weight because she found it was consistent with the medical record. (R. at 22.)

Plaintiff argues the ALJ's decision to accord these opinions significant and great weight was error because the opinions were from 2015 and 2016 and therefore not based on a complete record. (Pl. Br. at 15–17.) The Court is not persuaded by this argument for several reasons. First, the opinions were supported by the medical records available at the time, including those from Southwest Network. *See* 20 C.F.R. § 404.1527(c)(3). In reviewing the records, Dr. Khan found that Plaintiff's providers generally reported him as having good concentration; normal speech and memory; some irritability; and a mostly normal mood, albeit sometimes depressed or blunted. (R. at 72.) Dr. Rubin reviewed the same records and those produced in the months between the initial denial and reconsideration and made similar findings. (R. at 89.) Second, although the medical evidence reviewed by Drs. Khan and Rubin was from 2014–2016, it was consistent with many of the later medical records. *See* 20 C.F.R. § 404.1527(c)(4).

Third, as Defendant pointed out, the ALJ afforded only partial weight to Dr. Haggar's opinion because the ALJ found Plaintiff suffered from *more limitations*[2] than what Dr. Haggar opined to. Thus, the ALJ gave the most weight to the most restrictive medical opinions, Dr. Khan's and Dr. Rubin's. It is the ALJ's job to resolve conflicts in medical testimony. *See Garrison*, 759 F.3d at 1010. Here, she resolved them in Plaintiff's favor. Finally, the burden of producing evidence to prove disability is on Plaintiff. 20 C.F.R. § 404.1512(a). Plaintiff never submitted a more recent medical opinion that the ALJ could consider.

Accordingly, the ALJ did not err in assigning significant weight to Dr. Khan's opinion and great weight to Dr. Rubin's opinion.

    **C.    The ALJ did not err in determining Plaintiff's RFC.**

In assessing Plaintiff's impairments under Appendix 1 of Subpart P, 20 C.F.R. Part 404, the ALJ found Plaintiff has a moderate limitation with regard to concentrating, persisting, or maintaining pace. (R. at 18.) Plaintiff contends the subsequently formulated mental RFC—in particular, the ability to perform "simple, unskilled work"—does not account for this moderate limitation. Specifically, Plaintiff argues the ALJ erred because she "did not articulate whether [Plaintiff] would be able to *sustain* those tasks on a regular and continuing basis." (Pl. Br. at 18) (emphasis in original).

The ALJ must "assess the nature and extent of a [claimant's] mental limitations and restrictions" in formulating the RFC. 20 C.F.R. § 404.1545(c). However, the RFC need not contain a verbatim recitation of all limitations if the RFC otherwise incorporates them. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008). "The relevant inquiry is whether the medical evidence supports the ALJ's findings to the extent that they are consistent with the medical evidence." *Merrill-Russell v. Comm'r of Soc. Sec. Admin.*, 411 F. Supp. 3d 503, 510 (D. Ariz. 2019) (quoting *Bennett v. Colvin*, 202 F. Supp. 3d 1119,

---

[2] Both parties are in accord that it appears the ALJ opinion contained a typo regarding Dr. Haggar's opinion. (Pl. Br. at 4 n.6; *see* Def. Br. at 15.) The ALJ found Plaintiff "less restricted" than Dr. Haggar opined. (R. at 22.) From the surrounding context and content, however, it seems that this should say "more restricted."

1126 (N.D. Cal. 2016)).

In *Stubbs-Danielson*, a non-examining physician found the claimant had several moderate limitations in various mental areas but ultimately concluded she retained the ability to "carry out simple tasks." 539 F.3d at 1174. The Ninth Circuit determined the claimant's RFC—"simple, routine, repetitive sedentary work"—as determined by the ALJ sufficiently incorporated her moderate limitations. *Id.* Similarly, in *Merrill-Russell*, the ALJ found a moderate limitation in concentration, persistence, and pace and limited the claimant's RFC to "simple, routine work." 411 F. Supp. 3d at 510. The ALJ properly accounted for the claimant's limitations based on records from her treating providers, who consistently noted her concentration and attention as good or normal. *Id.*

The same is true here. Plaintiff's treating providers at Southwest Network consistently documented good concentration, normal and logical thought processes, and age-appropriate memory. Further, as the Court determined, the ALJ properly gave weight to Dr. Khan's and Dr. Rubin's opinions that Plaintiff can "carry out (one to two step) instructions" and has "an adequate ability to perform at a consistent pace if . . . engaged in a simple task." (R. at 74, 92.) The Court finds the ALJ's conclusion supported by substantial evidence and therefore finds no error in the particular construction of Plaintiff's RFC.

**D.     The ALJ improperly discredited Plaintiff's lay witness testimony.**

Plaintiff's mother, Barbara Urlaub, completed a Third-Party Function Report regarding Plaintiff's limitations. (R. at 235–42.) The ALJ rejected her statement for three reasons: (1) Ms. Urlaub is not medically trained; (2) she is not an acceptable medical source pursuant to SSA regulations; and (3) she is not a disinterested party due to her special relationship with Plaintiff. (R. at 20.) The Court finds none of these reasons legally sufficient.

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). The ALJ must provide germane

reasons for discounting lay testimony. *Id.* A lay witness need not be medically trained to provide testimony about the claimant's ability to work. *See* 20 C.F.R. § 404.1513(d); *Dodrill*, 12 F.3d at 918–19 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). Ms. Urlaub's testimony pertained to Plaintiff's personality and routines, and relayed her observations about his ability to get along with people, concentrate on a sustained basis, follow instructions, and manage money. This is the precise type of statement she is qualified to give, as it is based on personal observation and not necessarily information that would be revealed during a medical examination or through clinical tests. Further, the regulations expressly contemplate consideration of lay witness testimony. *See* 20 C.F.R. § 404.1513(a)(3). For these reasons, the first and second grounds for discounting Ms. Urlaub's testimony are insufficient.

The fact that a lay witness is a close family member or may have an "abstract pecuniary interest" in a claim is not a sufficient reason for an ALJ to discredit that witness's testimony. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) (holding the ALJ's reason for discrediting the lay witness testimony—that she was the claimant's mother and therefore "biased"—was legally insufficient). Therefore, the ALJ's third reason for discrediting Ms. Urlaub's statement was error.

### E. The credit-as-true rule does not apply.

Plaintiff asks that the Court remand his case for payment of benefits rather than for further proceedings. The credit-as-true rule applies if three elements are present. *Garrison*, 759 F.3d at 1020. First, the record must be fully developed such that further administrative proceedings would not be useful. *Id.* Second, the ALJ must have failed to provide legally sufficient reasons for rejecting evidence. *Id.* Third, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* Even if all elements of the credit-as-true rule are met, the Court maintains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to

whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.*

The proper remedy in this case is to remand for further proceedings. The Court finds that further proceedings would be useful, particularly for determining whether the episodic nature of Plaintiff's bipolar disorder would be work-preclusive. For example, Plaintiff stated he may experience irritability and anger for several days in one week, during which he "does not have energy to do anything really." (R. at 55.) However, these limitations were not presented to the vocational expert. Therefore, remand for further proceedings is the appropriate remedy.

**IT IS THEREFORE ORDERED** reversing the May 17, 2018 decision of the Administrative Law Judge (R. at 15–25) as upheld by the Appeals Council on March 9, 2019 (R. at 1–6).

**IT IS FURTHER ORDERED** remanding this matter for further consideration consistent with this Order.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this matter.

Dated this 2nd day of April, 2020.

Honorable John J. Tuchi
United States District Judge